Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN ROBBINS, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| PERSPECTA INC., MAC CURTIS, SANJU K. BANSAL, SONDRA BARBOUR, LISA DISBROW, GLENN A. EISENBERG, PAMELA KIMMET, RAMZI MUSALLAM, PHILIP NOLAN, BETTY SAPP, and MIKE VENTLING, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Jean Robbins ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is an action against Perspecta Inc. ("Perspecta" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Perspecta by Jaguar ParentCo Inc. ("Parent") and Jaguar Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Parent.[1]

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and Veritas has principal offices in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] Parent and Merger Sub are subsidiaries of Peraton Intermediate Holding Corp. ("Peraton"), which is beneficially owned by affiliates of The Veritas Capital Fund V, L.P. ("Veritas Fund V") and The Veritas Capital Fund VII, L.P. ("Veritas Fund VII" and, together with Veritas Fund V, "Veritas").

## PARTIES

6.     Plaintiff is, and has been at all relevant times hereto, an owner of Perspecta common stock.

7.     Defendant Perspecta provides enterprise information technology services to government customers in the United States federal, state, and local markets. The Company is incorporated in Nevada. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "PRSP."

8.     Defendant Mac Curtis ("Curtis") is Chief Executive Officer ("CEO") and Chairman of the Board of the Company.

9.     Defendant Sanju K. Bansal ("Bansal") is a director of the Company.

10.    Defendant Sondra Barbour ("Barbour") is a director of the Company.

11.    Defendant Lisa Disbrow ("Disbrow") is a director of the Company.

12.    Defendant Glenn A. Eisenberg ("Eisenberg") is a director of the Company.

13.    Defendant Pamela Kimmet ("Kimmet") is a director of the Company.

14.    Defendant Ramzi Musallam ("Musallam") is a director of the Company. Defendant Musallam is also CEO and Managing Partner of Veritas Capital Management.

15.    Defendant Philip Nolan ("Nolan") is a director of the Company.

16.    Defendant Betty Sapp ("Sapp") is a director of the Company.

17.    Defendant Mike Ventling ("Ventling") is a director of the Company.

18.    Defendants Curtis, Bansal, Barbour, Disbrow, Eisenberg, Kimmet, Musallam, Nolan, Sapp, and Ventling are collectively referred to herein as the "Individual Defendants."

19.    Defendants Perspecta and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.  The Proposed Transaction**

20.    On January 27, 2021, Perspecta announced that it had entered into a definitive agreement under which it would be acquired by Peraton in an all-cash transaction. Under the terms of the agreement, Perspecta stockholders will receive $29.35 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**Veritas Capital to acquire Perspecta in all-cash transaction valued at $7.1 billion**

Perspecta stockholders to receive $29.35 in cash per share

Veritas to combine Perspecta with affiliate Peraton to create a leading platform in government technology solutions

NEWS PROVIDED BY
**Perspecta Inc.**
Jan 27, 2021, 08:28 ET

CHANTILLY, Va., Jan. 27, 2021 /PRNewswire/ -- Perspecta Inc. (NYSE: PRSP) ("Perspecta" or the "Company"), a leading U.S. government services provider, today announced that it has entered into a definitive agreement under which it will be acquired by Peraton, a portfolio company of leading private investment firm Veritas Capital ("Veritas"), in an all-cash transaction valued at $7.1 billion.

Under the terms of the agreement, Perspecta stockholders will receive $29.35 per share in cash, which represents a premium of 49.7% to the Company's unaffected closing stock price of $19.60 on November 6, 2020, the last trading day prior to media reports being published regarding a potential strategic process for Perspecta, and a premium of 11.8% to the closing stock price of $26.25 on January 26, 2021.

Following the closing of the transaction, Perspecta will be combined with Peraton, a trusted provider of highly differentiated space, intelligence, cyber, defense, homeland security and communications capabilities to select federal agencies and commercial entities. The combination will create a leading government technology provider that delivers end-to-end capabilities in IT and mission support and serves as the strategic partner of choice across a diverse array of U.S. government customers.

Ramzi Musallam, Chief Executive Officer and Managing Partner of Veritas said, "As a long-time investor in Perspecta and its predecessor companies for over a

decade, we have always recognized Perspecta for its market differentiation, leading-edge IP, and focused execution in the government technology space. Through the combination with Peraton, we have assembled a strong portfolio of top-tier government technology providers with complementary offerings and are confident that the addition of our resources and industry expertise will enable Perspecta to deliver even greater value to its customers and stakeholders."

Veritas is a significant Perspecta stockholder today, holding approximately 14.5% of Perspecta's shares outstanding. The government technology market has been a key focus area for Veritas since its inception.

"Today marks the beginning of an exciting new chapter for Perspecta. This announcement is the culmination of a comprehensive review process. Having considered all opportunities available, the Perspecta Board of Directors is confident this transaction offers the most compelling value creation for shareholders," said Mac Curtis, Chairman and Chief Executive Officer of Perspecta. "Together with Peraton and with the flexibility Perspecta will have as a private company supported by Veritas, Perspecta will be well positioned to build on our momentum and continue executing on customer commitments as Perspecta delivers cyber, digital-transformation and mission-focused solutions. Looking ahead, Perspecta remains fully committed to serving our customers with dedication, integrity and excellence and ensuring a seamless transition for our employees."

Stu Shea, Chairman, President and Chief Executive Officer of Peraton said, "Perspecta brings highly skilled talent and differentiated technology expertise across a broad range of customers in the government markets which will complement our offerings and enhance our ability to drive innovation. Together, we will create a top-tier, privately-owned government technology business with a focus on missions of consequence. We look forward to welcoming the Perspecta team to Peraton and to building on our growth and success as a proven and trusted partner."

**Approvals and Timing**

The transaction, which has been approved by the Perspecta Board of Directors, is expected to close in the first half of calendar 2021, subject to approval by Perspecta stockholders as well as the receipt of regulatory approvals and other customary closing conditions.

**Advisors**

Schulte Roth & Zabel LLP is serving as legal advisor to Veritas and Peraton. Goldman Sachs & Co. LLC and Stone Key Partners LLC are serving as financial co-advisors and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as legal advisor to Perspecta in connection with the transaction.

**About Veritas Capital**

Veritas is a longstanding investor in companies operating at the intersection of technology and government. The firm invests in companies that provide critical products and services, primarily technology and technology-enabled solutions, to government and commercial customers worldwide, including those operating in the healthcare, national security, software, education, aerospace & defense, government services, communications, and energy industries. Veritas seeks to create value by strategically transforming the companies in which it invests through organic and inorganic means.

For more information on Veritas, visit www.veritascapital.com.

**About Peraton**

Peraton provides innovative, reliable solutions to the nation's most sensitive and mission-critical programs and systems. As a trusted provider of highly differentiated space, intelligence, cyber, defense, homeland security, and communications capabilities, Peraton is a critical partner to the Intelligence Community, Department of Defense, and select federal agencies and commercial entities. Headquartered in Herndon, Virginia, the company employs 3,500 people across the U.S. and Canada. For more information on news and updates on Peraton, visit www.Peraton.com/news.

**About Perspecta Inc.**

At Perspecta (NYSE: PRSP), we question, we seek and we solve. Perspecta brings a diverse set of capabilities to our U.S. government customers in defense, intelligence, civilian, health care and state and local markets. Our 280+ issued, licensed and pending patents are more than just pieces of paper, they tell the story of our innovation. With offerings in mission services, digital transformation and enterprise operations, our team of nearly 14,000 engineers, analysts, investigators and architects work tirelessly to not only execute the mission, but build and support the backbone that enables it. Perspecta was formed to take on big challenges. We are an engine for growth and success and we enable our customers to build a better nation. For more information about Perspecta, visit perspecta.com.

21.     On April 2, 2021, the Company filed with the SEC a Schedule 14A Definitive

Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") in connection

with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22.     The Proxy Statement, which recommends that Perspecta shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Perspecta's financial projections; (ii) the financial analyses performed by Perspecta's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Stone Key Partners LLC ("Stone Key"), in connection with their fairness opinions; (iii) potential conflicts of interest involving Goldman Sachs and Stone Key; and (iv) the sales process leading up to the Proposed Transaction.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Board; Fairness of the Merger; (iii) Opinions of Perspecta's Financial Advisors; and (iv) Certain Unaudited Prospective Financial Information.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the May 5, 2021 shareholder vote on the Proposed Transaction, Perspecta shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Perspecta's Financial Projections**

25.     The Proxy Statement omits material information concerning Perspecta's financial projections.

26.     The Proxy Statement provides that, "[i]n connection with its consideration of the Company's stand-alone prospects and potential strategic transactions available to the Company, management of the Company prepared and provided to the Board, Goldman Sachs and Stone Key financial forecasts (together, the "Management Projections")." Company management also

prepared financial information related to the expected utilization by the Company of certain federal net operating loss carryforwards and tax benefits from amortization and depreciation for the Company (the "Tax Attributes," and together with the "Management Projections," the "Projections").[2]

27.     First, the Proxy Statement fails to disclose Perspecta's projected cash flows and all underlying line items thereto for the years 2021 through 2026. According to the Proxy Statement, Goldman Sachs and Stone Key performed discounted cash flow analyses of Perspecta using projections provided by Perspecta's management. More specifically, Goldman Sachs utilized projections of the Company's unlevered free cash flows for the period January 1, 2021 to March 31, 2026, "as reflected in the 'Forecasts,'" i.e., "financial analyses and forecasts for the Company prepared by management of the Company[.]" Further, Stone Key "based its discounted cash flow analyses on the management projections that Stone Key was directed to use . . . by Perspecta's management." Yet the Company's cash flow projections and all underlying line items thereto have not been disclosed.

28.     Second, with respect to the Projections, the Proxy Statement fails to disclose: (1) all line items underlying: (i) Total Revenue, and (ii) Adjusted EBITDA; and (2) a reconciliation of all non-GAAP to GAAP metrics.

29.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to

---

[2] The Tax Attributes were apparently provided to Goldman Sachs, Stone Key, Veritas Capital and other potential transaction counterparties.

replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

30.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[3]

31.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

32.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs and Stone Key.

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 5, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

33.   The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs and Stone Key in rendering their purported fairness opinions must be fairly disclosed to Perspecta shareholders. The description of Goldman Sachs's and Stone Key's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Perspecta shareholders are unable to fully understand Goldman Sachs's and Stone Key's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

A.   *Goldman Sachs's Analyses*

34.   The Proxy Statement fails to disclose the following concerning Goldman Sachs's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 6.25% to 7.25% and of 4.50%, and (ii) range of terminal year multiples of 8.5x to 10.5x; (2) the unlevered free cash flows to be generated by the Company for the period from January 1, 2021 to March 31, 2026 and all underlying line items; (3) the range of illustrative terminal values for the Company as of April 1, 2026; (4) the Company's net debt as of January 1, 2021; and (5) the implied total number of fully diluted shares outstanding as of January 25, 2021.

35.   The Proxy Statement fails to disclose the following concerning Goldman Sachs's "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) range of multiples of 8.0x to 10x; and (ii) discount rate of 8%; (2) the Company's projected net debt as of March 31, 2021, 2022, 2023, and 2024, respectively; (3) the number of fully diluted shares outstanding; (4) the implied equity values per share of the

Company's common stock as of March 31, 2021, 2022, 2023, and 2024; and (5) the aggregate dividends per share of Company common stock estimated to be paid by the Company for the fourth quarter of 2021 and each of the fiscal years 2022 to 2024.

36. With respect to Goldman Sachs's "*Selected Transactions Analysis*," the Proxy Statement fails to disclose the total values and closing dates of the transactions.

37. With respect to Goldman Sachs's "*Premia Paid Analysis*," the Proxy Statement fails to disclose each transaction and the premiums paid therein.

**B. *Stone Key's Analyses***

38. The Proxy Statement fails to disclose the following concerning Stone Key's "*Discounted Cash Flow Analyses*": (1) Perspecta's projected unlevered after-tax free cash flows, and all underlying line items; and (2) the individual inputs and assumptions underlying the (i) range of Perspecta's weighted average cost of capital of 6.5% to 7.5%, (ii) perpetual growth rates of 0.50%-1.50%, and (iii) multiples of 9.0x to 13.0x.

39. With respect to Stone Key's "*Precedent Merger and Acquisition Transactions Analysis*" and "*Comparable Company Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each transaction and company Stone Key observed in its analyses.

40. With respect to Stone Key's Wall Street analyst price targets analysis, the Proxy Statement fails to disclose: (1) the individual price targets observed by Stone Key in its analysis; and (2) the sources thereof.

41. With respect to Stone Key's present value of future stock prices analysis, the Proxy Statement fails to disclose: (1) the discount rates used in the analysis; (2) the range of forward EBITDA multiples; (3) management projected net debt; and (4) management projected fully

diluted shares outstanding.

42.     With respect to Stone Key's precedent premiums paid analysis of certain precedent transactions, the Proxy Statement fails to disclose each transaction and the premiums paid therein.

> **3.   Material Omissions Concerning Potential Conflicts of Interest Involving Goldman Sachs and Stone Key**

43.     The Proxy Statement omits material information concerning potential conflicts of interest involving Goldman Sachs and Stone Key.

44.     The Proxy Statement provides that "Goldman Sachs may receive an additional fee of up to $2 million at the Company's discretion." The Proxy Statement, however, fails to disclose the circumstances under which "Goldman Sachs may receive an additional fee of up to $2 million" and whether the Company intends to pay Goldman Sachs such a fee.

45.     The Proxy Statement provides that, "[i]n the sole discretion of the Chairman and Chief Executive Officer of Perspecta, [Stone Key's] fee may be increased by up to $2 million." The Proxy Statement, however, fails to disclose the circumstances under which Stone Key's "fee may be increased by up to $2 million" and whether the Company intends to increase Stone Key's fee (and if so, by what amount).

46.     The Proxy Statement fails to disclose when the Board was notified that Goldman Sachs "recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division directly to Veritas Capital and/or its affiliates and portfolio companies (which may include companies that are not controlled by Veritas Capital) of approximately $51 million."

47.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of

a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

48.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.   Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

49.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

50.     The Proxy Statement provides that, during the sales process, Perspecta was engaged in discussions concerning potential strategic transactions with multiple counterparties. Perspecta executed non-disclosure agreements with certain counterparties, including each of Company A, Company B, PE Firm D, and PE Firm E, which included customary standstill provisions that terminated upon Perspecta's entry into the Proposed Transaction.

51.     The Proxy Statement, however, fails to disclose: (1) whether Perspecta executed confidentiality and/or non-disclosure agreements with other counterparties during the sales process, including, but not limited to, PE Firm A, PE Firm B, PE Firm C, Company C, Company D, Company E, and the "U.S. government contracting company" referred to by Defendant Curtis during his August 26, 2020 telephone call with the CEOs of Company B and Company C; and (2) the terms of those potential confidentiality and/or non-disclosure agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

52.     Without this information, Perspecta shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact

they are or were contractually prohibited from doing so. This information is material because a reasonable Perspecta shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

53.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

54.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.    During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

56.    Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

57.    The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote

on the Proposed Transaction.

58.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder.

59.     Because of the false and misleading statements and omissions in the Proxy

Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

60.     Plaintiff repeats and realleges each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

61.     The Individual Defendants acted as control persons of the Company within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false statements contained in the Proxy

Statement filed with the SEC, they had the power to and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the

false and misleading Proxy Statement.

62.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected. As officers and/or directors of a publicly owned

company, the Individual Defendants had a duty to disseminate accurate and truthful information

with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants (other than Defendant Musallam) to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

64.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

65.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 5, 2021                              Respectfully submitted,

                                                  **HALPER SADEH LLP**

                                                  By: /s/ Daniel Sadeh
                                                  Daniel Sadeh, Esq.
                                                  Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                  667 Madison Avenue, 5th Floor
                                                  New York, NY 10065
                                                  Telephone: (212) 763-0060
                                                  Facsimile: (646) 776-2600
                                                  Email: sadeh@halpersadeh.com
                                                          zhalper@halpersadeh.com

                                                  *Counsel for Plaintiff*